**SO ORDERED.**

**SIGNED this 23 day of July, 2007.**



*Dale L. Somers*
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| BRYAN K. MARSHALL and<br>JULIE M. MARSHALL, | CASE NO. 05-18216<br>CHAPTER 7 |
| DEBTORS. | |
| LINDA S. PARKS, Trustee, | |
| PLAINTIFF, | |
| v. | ADV. NO. 06-5181 |
| FIA CARD SERVICES, N.A., successor<br>in interest to MBNA CORPORATION, | |
| DEFENDANTS. | |

MEMORANDUM AND ORDER DENYING
TRUSTEE'S COMPLAINT TO RECOVER PREFERENCE
FROM DEFENDANT FIA CARD SERVICES

The matter under advisement is the Chapter 7 Trustee's Complaint to Recover Preference[1] pursuant to 11 U.S.C. § 547(b).[2] The plaintiff Chapter 7 Trustee, Linda S. Parks (hereafter "Trustee"), appears by Jennifer L. Goheen-Lynch of Hite, Fanning & Honeyman, L.L.P. The defendant FIA Card Services, N.A. (hereafter "FIA" or "Creditor") appears by Elizabeth A. Carson of Bruce, Bruce & Lehman, L.L.C. FIA is the successor to MBNA Corporation, doing business as MBNA America (hereafter "MBNA"). There are no other appearances. The Court has jurisdiction.[3]

In this action, the Trustee seeks to recover payments credited to the Debtors' two credit card accounts with MBNA made at Debtors' request by transferring the balances on the MBNA accounts to Debtors' Capital One Platinum Visa Accounts. The dispute is whether the transactions constitute transfers of "an interest of the debtor in property" within the meaning of § 547(b). The Trustee characterizes the payments as the transfer of borrowed funds, which are

---

[1] The Trustee's complaint, filed on March 31, 2006, alleges preferential transfers were received by defendants MBNA Corporation and GE Money Bank/Monogram Credit Bank of Georgia. Doc.1. On September 11, 2006 the Court entered a Journal Entry of Dismissal of Adversary Action Against GE Money Bank/Monogram Credit Card Bank of Georgia, d/b/a/ Lowe's Credit Card, stating that the Complaint had been settled as to this defendant and dismissing that portion of the Complaint with prejudice. Doc. 24.

[2] This case was filed on October 13, 2005, before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 become effective. All statutory references to the Bankruptcy Code are to 11 U.S.C. §§ 101 - 1330 (2004), unless otherwise specified. All references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr. P. (2004), unless otherwise specified.

[3] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A complaint to recover a preference is a core proceeding which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(F). There is no objection to venue or jurisdiction over the parties.

transfers for preference purposes. The Debtors, on the other hand, contend that the transfers were not preferential because they were from bank to bank and did not diminish the estate. For the reasons stated below, the Court holds that the transfers were not preferential.

**FINDINGS OF FACT**.

The parties submitted this dispute for resolution based upon a detailed joint stipulation of facts and briefs. Based upon the stipulation, the Court finds that the facts are as follows.

Debtors had two credit card accounts with MBNA, one account ending in 6264 and one account ending in 7781. On July 24, 2005 the balance on the MBNA account ending in 6264 was $17,009.55, and the balance on the MBNA account ending in 7781 was $22,449.15. Debtors also had two Capital One Platinum Mastercard Accounts, with $30,000 available credit on the account ending in 0125 and $25,000 available credit on the account ending in 5090[4].

On July 27, 2005, in accord with Debtors' directions, Capital One paid MBNA the sum of $17,000 on the MBNA account ending in 6264 and the sum of $21,000 on the MBNA account ending in 7781. Debtors' credit limit on the MBNA account ending in 6264 was increased by the amount of the payment.[5] The amounts due by Debtors to Capital One Platinum MasterCard Accounts were increased by the amounts of the payments to MBNA, with the transfer of $17,000 being charged to the Capital account ending in 0125 and $21,000 being charged to the account

---

[4] *See* Stipulations, Exh. nos. D and E.

[5] *See* Stipulations, Exh. nos. A and B. For the MBNA account ending in 6264 cash or credit available increased from $1,790.45 on the July statement to $19,752.45 on the August statement, after the $17,000 transfer from MBNA. The facts do not include information about the credit available after the payment for MBNA account ending in 7781. See Stipulations, Exh. no. C. (statements for the MBNA account ending in 7781 that are in a format different from those for the account ending in 6264, and the credit balance is not shown.)

3

ending in 5090. No funds were disbursed to the Debtors. Debtors' total credit card debt was not increased by the transactions.

In the past, Debtors had made sporadic, monthly payments to MBNA, in amounts significantly less that the full account balances. The July 27, 2005 payments were made within the preference period, while the Debtors were insolvent.

**ANALYSIS AND CONCLUSIONS OF LAW.**

"Equality of distribution among creditors is a central policy of the Bankruptcy Code."[6] Section 547, which allows the trustee to avoid preferential transfers, furthers this policy.[7] As stated by the Tenth Circuit, § 547 has a "dual purpose: it prevents individual creditors from dismembering the assets of the debtor in a manner that negatively impacts other creditors, and it allows all creditors to obtain a more equitable distribution of the assets of the debtor."[8] Under § 547 (b), "a transfer is avoidable if it: (1) is of an interest of the debtor in property; (2) is for the benefit of a creditor; (3) is made for or on account of antecedent debt owed by the debtor before the transfer was made; (4) is made while the debtor was insolvent; (5) is made on or within ninety days before the date the bankruptcy petition was filed; and (6) allows a creditor to receive more than the creditor would otherwise be entitled to receive from the bankruptcy estate."[9] In this case, as to the payments to MBNA, the parties agree that all elements except the first are

---

[6] *Begier v. I.R.S.*, 496 U.S. 53, 58 (1990).

[7] *Id.*

[8] *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1196 (10th Cir. 2002).

[9] *Id.*

4

satisfied. MBNA challenges only the Trustee's assertion that the payments were of "an interest of the debtor in property."

The Code does not define "an interest of the debtor in property." "Because the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate - the property available for distribution to creditors - 'property of the debtor' subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings."[10] Section "547(b)'s 'property of the debtor' is 'coextensive with interest of the debtor in property as that term is used in 11 U.S.C. § 541(a)(1).'"[11] Section 541(a)(1) defines the property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." For purposes of the preference statute, "[p]roperty interests are created and defined by state law."[12] "[T]he fundamental inquiry under § 547(b) will be whether the Debtor had a legal or equitable interest in the property [transferred] such that the transfer at issue diminished or depleted the Debtor's estate."[13] In preference litigation, the form of the transaction must satisfy the statutory elements, and the "debtor's intent or motive is not material."[14]

---

[10] *Begier v. I.R.S.*, 496 U.S. at 58.

[11] *In re Ogden*, 314 F. 2d at 1197, *citing Begier v. I.R.S.*, 496 U.S. at 59 n.3.

[12] *Id., citing Butner v. U.S.*, 440 U.S. 48, 55 (1979).

[13] *Manchester v. First Bank & Trust Co. (In re Moses)*, 256 B.R. 641, 645 (10th Cir. BAP 2000), *quoting Bailey v. Hazen (In re Ogden)*, 243 B.R. 104, 113 (10th Cir. BAP 2000).

[14] 5 *Collier on Bankruptcy* ¶ 547.03 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2007).

5

In this case, the Trustee contends that the Debtors transferred money to MBNA in payment of the majority of the outstanding balances of their two credit card accounts and the money transferred was an interest of the Debtors in property. Debtors respond that Capital One, not the Debtors, transferred cash to MBNA. According to Debtors, there was no preferential transfer because all that happened was a substitution of one creditor for another, which did not result in a diminution of the assets of the estate.

These conflicting positions require the Court to determine the nature of the transactions. Before the payments by Capitol One, the Debtors had available pursuant to their agreements with Capitol One two substantial lines of credit. On July 28, 2005, Debtors accepted Capitol One's offer of credit; pursuant to Debtors' request, Capitol One transferred funds to MBNA and posted balances due from Debtors to Capital One in the amounts paid to MBNA. There was a substitution of creditors. Before the transactions Debtors owed MBNA; after the transactions, Debtors' obligation to MBNA was reduced by $28,000 and their liability to Capitol One increased by a like amount.[15] At least as to the MBNA account ending in 6264, there was a reciprocal change in the lines of credit available from MBNA and Capitol One account ending in 0125.

Did these transactions constitute a transfer of an interest of the Debtors in property, as required for preferential transfers? The Court finds they did not. Capitol One, not the Debtors, paid MBNA. The Debtors did not transfer an interest in property to MBNA. The Debtors exercised a right to draw on a line of credit offered by Capital One.[16] Credit is not an interest

---

[15] It appears that Debtors were not charged a transfer fee by Capitol One.

[16] In addition, it is likely that the transactions did not reduce the total credit available to Debtors. As to the $17,000 payment, the decease in credit available through Capitol One was offset by the increase

available for satisfaction of creditors' claims in bankruptcy. Neither Debtors' assets nor their liabilities changed.

The finding that there was not a transfer of an interest in property is in harmony with the policy of § 547. The recovery of interests in property of the debtor transferred shortly before filing serves the purposes of protecting against dismemberment of the debtor's assets and promoting equality of distribution to creditors. Transfers that deplete or diminish the debtor's estate are recovered for the benefit of the estate. "Of course, if the debtor transfers property that would not have been available for distribution to his creditors in a bankruptcy proceeding, the policy behind the avoidance power is not implicated."[17] Here the Debtor's drawing on their line of credit did not diminish the property available to their creditors. A debtor's pre-petition right to receive an extension of credit is not a right which can be utilized for the benefit of creditors of the estate.[18]

This Court's analysis is similar to that of Judge Thurman in *In re Perry*.[19] Debtor filed for relief 62 days after he directed MBNA, his credit card company, to make a $7,000 payment to Ark, a creditor. The transfer of funds was between the card issuer and the creditor; resulting in a decrease of the debtor's available credit. The trustee filed a preference action to recover the $7,000 payment. On motion of the creditor, the court dismissed the complaint. The court

---

in the line of credit available from MBNA. The materials supplied by the parties do not provide the available credit information for the account to which the $21,000 payment was credited.

[17] *Begier v. I.R.S.*, 496 U.S. at 58.

[18] *See* 11 U.S.C. § 365(c)(2) (the trustee may not assume a contract to make a loan or extend other debt financing or financial accommodation). Post-petition extensions of credit are governed by § 364.

[19] *Loveridge v. The Ark of Little Cottonwood, Inc. (In re Perry),* 343 B.R. 685 (Bankr. D. Utah 2005).

7

reasoned that "[a]t most a debtor's credit constitutes merely potential wealth" which "on its own serves no immediate benefit to the estate in bankruptcy."[20] Creditors cannot force a debtor to use credit to provide assets for distribution. The court concluded:

> Despite the broad scope of § 541, the payment at issue was not a transfer of property of the estate. The payment constituted merely a transfer from MBNA to Ark. Debtor's estate was only implicated by this transfer insofar as MBNA decreased the credit allowance under Debtor's credit card account. Since the payment was a transfer of mere credit, and did not affect the amount of liquidity or property available for distribution by the estate's creditors, the payment was not a transfer of an interest of the debtor in property.[21]

This Court's analysis, as well as that of Judge Thurman, appear to represent a minority view. The Trustee relies on several decisions finding a preferential transfer under similar circumstances.[22] For the reasons stated below, this Court declines to follow those authorities.

The cases cited by the Trustee include *In re Moses*, a Tenth Circuit BAP decision. In that case, the Chapter 7 trustee brought a reference action to recover a payment which debtor had made to a bank with proceeds of a loan obtained from his employee benefit plan. Although the debtor informed the employee benefit plan that he intended to use the loan proceeds in part to pay off his bank loan, the loan proceeds were paid directly to debtor by check. On the same day

---

[20] *Id.*, 343 B.R. at 688.

[21] *Id.*

[22] Trustee relies primarily upon *Yoppolo v. Greenwood Trust Co. (In re Spitler)*, 213 B.R. 995 (Bankr. N.D. Ohio 1997); and *Lewis v. Providian Bancorp (In re Getman)*, 218 B.R. 490 (Bankr. W.D. Mo.1998). Trustee also cites *Growe v. AT & T Universal Card Services (In re Adams)*, 240 B.R. 807 (Bankr. D. Me. 1999); *Rafool v. Citizens Equity Fed. Credit Union (In re Hurt)*, 202 B.R. 611 (Bankr. C. D. Ill. 1996); and *Reisz v. Napus Fed. Credit Union (In re Anderson)*, 275 B.R. 264 (Bankr. W.D. Ky 2002). In each of these three cases, the courts rejected the earmarking doctrine as a defense to a preference action where the debtors used credit provided by one credit card company to pay off another credit card debt.

8

he filed for bankruptcy, debtor used a portion of the loan proceeds to satisfy his debt with the bank. In defense of the preference action, the bank contended that the transfer was not of an interest in property of the debtor because the proceeds of the loan from the trust were "earmarked" for payment to the bank. The bankruptcy court granted the trustee's motion for summary judgment, and the BAP affirmed. The BAP described the earmarking doctrine as follows:

> "Earmarking" is a judicially-created doctrine said to apply when a new creditor pays a debtor's existing debt to an old creditor. This doctrine originally arose under the Bankruptcy Act in codebtor cases - the new creditor, who was obligated on an existing debt as a guarantor or surety, provided the debtor with funds to pay the old creditor. . .. In such cases, courts reasoned that the codebtor's payment to the old creditor did not constitute a transfer of the debtor's property, and there was no diminution of the debtor's estate inasmuch as the amount available for unsecured creditors remained the same as before the transfer regardless of the debtor's control of the transferred funds. . ..[23]
>
> The earmarking doctrine was eventually extended "to situations where the new creditor is not a guarantor but merely loans funds to the debtor for the purpose of enabling the debtor to pay the old creditor." This extension of the doctrine has been subject to attack.[24]

The BAP went on the reject the earmarking doctrine in other than co-debtor cases, finding it unjustly preferred the old creditor, undermined the goals of § 547, and was not a defense provided by § 547(c). The court therefore held that the earmarking doctrine "does not replace

---

[23] *In re Moses*, 256 B.R. at 645-46 (citations omitted).

[24] *Id.*, 256 B.R. at 646, *quoting McCuskey v. Nat'l Bank (In re Bohlen Enters., Ltd.)*, 859 F.2d 561, 566 (8th Cir. 1988).

9

the 'transfer of an interest of the debtor in property' element of § 547(b)."[25] As to the circumstances before it, the court concluded that the transfer was of an interest of the debtor in property. The transfer diminished the debtor's estate because the loan proceeds that were paid to the debtor would have been available to the pool of creditors if they were not paid to one creditor, the bank.[26] While the debtor's liabilities did not change, his assets did.

In accord with *Moses*, the Debtors do not rely upon and this Court has not invoked the earmarking doctrine. The Trustee's complaint has been analyzed using the "interest of the debtor in property" element of § 547(a). That analysis leads to a result different from *Moses* because in this case, in contrast to *Moses*, the proceeds of the new loan were never in the possession of the Debtors and were not assets which would have been available to other creditors if not forwarded to MBNA.

The primary case upon which the Trustee relies is *Spitler*.[27] In May 1996, debtors transferred their debt balances on two credit cards to a new credit card offered by defendant Greenwood. In July and August, 1996, debtors made two cash payments on the Greenwood credit card debt. In September, debtors made a $9,950.10 payment to Greenwood by writing a convenience check on another credit card account offered by First Union. The debtors thereby consolidated three accounts to First Union. Debtors filed for relief less than 90 days after the September payment. The trustee filed a preference action to recover the September payment from Greenwood. In defense, Greenwood first argued that the debtors never possessed legal title

---

[25] *Id.*, 256 B.R. at 645.

[26] *Id.*, 256 B.R. at 649.

[27] *In re Spitler*, 213 B.R. at 995.

10

to the funds, never exercised dominion or control over the funds, and only exercised a contractual right to use the line of credit. As a second argument, Greenwood relied upon the earmarking doctrine. The court denied Greenwood's motion for summary judgment. It addressed the first and second arguments together, finding the case law under earmarking doctrine as stated by the Eighth Circuit in *Bohlen*[28] and the Sixth Circuit in *Montgomery*[29] persuasive and controlling. Under these authorities, the determinative issue was whether the debtor exercised dominion and control over the loan proceeds. Turning to the facts of the trustee's complaint, the court found that debtors had dominion and control over the use of the credit proceeds and could have used them to pay any number of creditors or simply kept the money for themselves.[30]

The Trustee also relies upon *Getman*,[31] a case from the Western District of Missouri, where the *Bohlen* decision relied upon in *Spitler* is controlling precedent. In *Getman*, as in this case, at debtor's request, an account balance was transferred from a pre-existing creditor (First Deposit) to new credit card account at Bank of America by direct payment to the creditor First Deposit. When defending a preference action, the First Deposit's successor Providian relied upon the earmarking doctrine. The court granted the trustee's motion for summary judgment. It noted that the Eighth Circuit in *Bohlen* limited the earmarking doctrine to "cases where the new

---

[28] *McCuskey v. Nat'l Bank (In re Bohlen Enters., Ltd.)*, 859 F.2d 561 (8th Cir. 1988).

[29] *McLemore v. Third Nat'l Bank In Nashville (In re Montgomery)*, 983 F.2d 1389 (6th Cir. 1993).

[30] *In re Spitler*, 213 B.R. at 998.

[31] *In re Getman*, 218 B.R. at 490.

11

creditor has control over disposition"[32] of the loan proceeds. In *Getman* the court held earmarking did not provide a defense to the creditor because the debtor alone designated the creditor for payment. The court reasoned that debtor could have used the loan proceeds to pay any creditor or to purchase assets which might have been available for his creditors. Based upon the inapplicability of earmarking, the court concluded "[w]hen debtor drew down such funds by designating them for payment to Providian, he had a property interest in such funds."[33]

This Court respectfully disagrees with *Spitler* and *Getman*. In the opinion of this Court, the theoretical possibility that a debtor can draw upon a line of credit for any purpose is not sufficient to find the debtor has a property interest in credit proceeds that at debtor's direction are paid directly to a specific creditor. A debtor's line of credit is not an asset available to increase the property available for the payment to creditors. The *Spitler* and *Getman* courts wrongfully focused upon what the debtor could have done rather than what he did do.

**CONCLUSION.**

For the foregoing reasons, the Court finds that Trustee has not sustained her burden of proof. A transaction will not be set aside as preferential unless the transfer was of an interest of the debtor in property. In this case, the funds paid to defendant MBNA were assets of Capitol One in which the Debtors did not have an interest for purposes of § 547. Debtors merely exercised an offer to transfer credit card balances; this offer, if not exercised as of the date of filing, would have added no value to the estate. The transfer was a mere substitution of creditors

---

[32] *Id.*, 218 B.R. at 493.

[33] *Id.*, 218 B.R. at 494.

which had no impact on either the property of the estate or the value of the claims asserted against the estate. The Complaint is denied.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###

13

Case 06-05181    Doc# 44    Filed 07/23/07    Page 13 of 13